**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TARAHJAY M. ROSS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-01994** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **CAPTAIN STEVE SMITH, <u>et al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

On October 29, 2021, <u>pro se</u> Plaintiff Tarahjay M. Ross ("Plaintiff"), who is presently

incarcerated as a pretrial detainee at the Franklin County Jail in Chambersburg, Pennsylvania,

initiated the above-captioned action by filing a complaint pursuant to 42 U.S.C. § 1983 against

Captain Steve Smith ("Smith"), Lieutenant Greg Mendenhall ("Mendenhall"), Lieutenant

Richard Armermann ("Armermann"), Warden Gregory Briggs ("Briggs") Warden Brian Clark

("Clark"), and Officers John Scott ("Scott"), Matthew Danner ("Danner"), Cameron Weaver

("Weaver"), Chaz ("Chaz"), and George Bell ("Bell"), concerning events that allegedly occurred

while Plaintiff was incarcerated at Dauphin County Prison ("DCP") in Harrisburg, Pennsylvania.

(Doc. No. 1.)  Plaintiff has also filed a motion for leave to proceed <u>in forma pauperis</u> (Doc. No.

2) and a motion to appoint counsel (Doc. No. 6).  Pursuant to the Prison Litigation Reform Act

of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of Plaintiff's complaint.  For

the reasons set forth below, the Court will grant Plaintiff leave to proceed <u>in forma pauperis</u>,

partially dismiss his complaint with leave to amend, and deny without prejudice his motion to

appoint counsel.

---

[1] <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

I.      BACKGROUND

In his complaint, Plaintiff alleges that from February 20-21, 2021, he was "kept in [his] cell for 32 hours against [his] will." (Doc. No. 1 at 7.) Plaintiff told several corrections officers that he did not receive his recreation time; they responded that they would check the cameras and that there would be consequences if Plaintiff had lied. (Id.) The officers came back "and stated [Plaintiff] was burnt, [and that he] would have to wait until the next day." (Id.) Plaintiff does not remember all of the officers involved, but remembers that one was CO George Bell. (Id.) Plaintiff asked first shift for the names of the correctional officers from third shift. (Id.) Those officers told Plaintiff that they did not know the names, and when Plaintiff asked them to check the logbook, he was told there was no such thing. (Id.)

Plaintiff alleges further that on February 23, 2021, he was told to lock into his cell after being out for fifty (50) minutes despite recreation being an hour long. (Id. at 8.) He avers that he got a broom so that he could sweep out his cell for the last ten (10) minutes, but that Defendant Scott followed him, took the broom, and swung it at him, hitting him on the left shoulder. (Id.) Plaintiff filed a complaint on an inmate request form. (Id.) The next day, Plaintiff had court and took the yellow carbon copies of his inmate request forms to tell his Public Defender about what had been occurring at DCP. (Id.) She told Plaintiff "to keep writing them" and that she was "going to send someone to come talk to [him] about the issues [he] was having with the correctional officers." (Id.)

On February 25, 2021, Plaintiff was let out of his cell at 6:00 a.m. for recreation, and he got a tablet from the charging station. (Id.) Plaintiff also placed two (2) more tablets by the door of cell 14. (Id. at 9.) Plaintiff pressed the intercom located by the pod door entrance, and avers that Defendant Scott answered by stating: "What, dummy." (Id.) Plaintiff asked for cell 14 to be

opened so that those inmates could get the tablets, and Defendant Scott refused, but told Plaintiff that he could lock in. (Id.) Plaintiff responded that he could, but that he had not done anything wrong. (Id.) Plaintiff proceeded to log into the tablet and start a video visit with a contact. (Id.) Sixty (60) seconds later, Defendant Scott entered the pod, telling Plaintiff to lock in. (Id.) Plaintiff logged out of his visit and started walking to his cell. (Id.) He avers that Defendant Scott pushed him towards his cell with his hand, and that once they arrived at Plaintiff's cell, he told Plaintiff that he was writing him up. (Id.) Plaintiff asked what he was being written up for, and Defendant Scott said, "watch this." (Id. at 9-10.)

An hour later, Defendants Scott, Weaver, Chaz, and Danner came to Plaintiff's cell with a striped shirt used for inmates who are on Restricted Housing Unit ("RHU") status, as well as those who have been written up. (Id. at 10.) They directed Plaintiff to strip and put on the clothes they had. (Id.) Plaintiff asked that they turn on their body cameras for his safety, and the officers refused. (Id.) Plaintiff stripped down to his boxers, in which he had placed all of his copies of his request forms. (Id.) When he went to retrieve them, Defendants, Danner, Weaver, and Chaz grabbed his arm and threw him on the bunk. (Id.) Plaintiff avers that he was handcuffed, punched in the right eye several times, kneed in the thighs, and sprayed with pepper spray. (Id. at 10-11.) His eye was scratched by someone's finger, and he was bleeding between the eyes. (Id. at 11.) Plaintiff alleges that Defendant Weaver spit on his back as well. (Id.) The officers turned the cameras on as Plaintiff was screaming that he was not resisting and could not breathe. (Id.)

Plaintiff was picked up and was sitting on the side of the bunk when the lieutenant entered his cell. (Id.) He claims that the lieutenant said, "this is ridiculous," and Plaintiff responded, "tell me about it." (Id.) Plaintiff asked that the lieutenant make sure that the copies

of his request forms be placed in his property bag, but alleges that they were taken instead.  (Id.)
The lieutenant took pictures of Plaintiff's nose and eye, and a nurse came and gave Plaintiff
Motrin for the pain.  (Id.)  The next day, a nurse and Defendant Danner came to Plaintiff's cell
and asked him what had happened.  (Id. at 11-12.)  Plaintiff explained the incident, and alleges
that Defendant Danner "made sure to have his camera on during this."  (Id. at 12.)

On March 4, 2021, Plaintiff was taken to the Sheriff's office underneath the courthouse.
(Id.)  Plaintiff avers that he met with an individual whom his Public Defender scheduled for him
to see.  (Id.)  That individual took a recorded statement from Plaintiff and took pictures of his
face with his iPhone.  (Id.)  On March 22, 2021, Plaintiff was taken out of his cell to talk to
Defendant Smith about not receiving recreation.  (Id.)  On April 1, 2021, Plaintiff was given a
form regarding his meeting with Defendant Smith; Plaintiff alleges that not once did Defendant
Smith mention any other request forms that Plaintiff had filed.  (Id. at 12-13.)  Defendant Smith
told Plaintiff that he had been unable to review camera footage from the recreation incident
because of the amount of time that had passed, but found Plaintiff's allegations to be without
merit after investigation.  (Id. at 13.)  Plaintiff appealed to Defendant Briggs, who "signed off on
it."  (Id.)  Plaintiff avers that after he was "brutally abused," he asked Defendant Mendenhall for
a phone call to tell his family what had happened but was refused.  (Id.)  According to Plaintiff,
Defendant Mendenhall was required to allow this phone call, even though Plaintiff had been
"texting every incident to loved ones on the tablet through the texting app."  (Id. at 13-14.)  On
April 22, 2021, Plaintiff had a bail hearing, at which he told the judge what had happened at
DCP.  (Id. at 14.)  According to Plaintiff, the judge wanted either to give him bail or move him to
a different jail.  (Id.)  Plaintiff indicates that on May 7, 2021, he was transferred to Franklin
County Jail from DCP.  (Id.)

Plaintiff avers that he suffers from anxiety, PTSD, and depression.  (Id.)  He claims that he has suffered the physical injuries noted above, as well as mental trauma, migraine headaches, and psychological trauma.  (Id.)  Based on the foregoing, Plaintiff asserts violations of his Fourth, Eighth, and Fourteenth Amendment rights, as well as violations of 18 U.S.C. §§ 241 and 242.  (Id. at 15.)  As relief, Plaintiff requests monetary damages, as well as "for [his] abusive Defendants to be terminated from their current job titles."  (Id.)

## II.     LEGAL STANDARDS

### A.      Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid

dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by

6

lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

**B.    Section 1983 Standard**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors."  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

**III.    DISCUSSION**

**A.    Plaintiff's Complaint**

**1.    Claims Pursuant to 18 U.S.C. §§ 241 and 242**

As noted supra, Plaintiff avers that Defendants' actions violated 18 U.S.C. §§ 241 and 242.  These statutes, however, are civil rights-related conspiracy statutes for which there is no private cause of action.  See Carpenter v. Ashby, 351 F. App'x 684, 688 (3d Cir. 2009) (agreeing with the district court's "dismissal of the 18 U.S.C. § 241 and § 242 claims" because "[n]either

statute creates a civil cause of action").  Accordingly, Plaintiff's claims pursuant to 18 U.S.C. §§ 241 and 242 will be dismissed.

### 2.    Claims Against Defendants Armermann and Clark

Although Plaintiff names Armermann and Clark as Defendants, he fails to state a claim against these individuals because the complaint is devoid of any allegations related to them. Thus, Plaintiff's complaint is subject to dismissal against Defendants Armermann and Clark for that reason alone.[2]  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  Moreover, while Plaintiff references an unnamed lieutenant who came to his cell on February 25, 2021, following the alleged use of excessive force, nothing in the complaint suggests that this individual was Defendant Armermann.  See Lawal v. McDonald, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff).

### 3.    Claims Against Defendants Smith and Briggs

Plaintiff appears to assert claims against Defendants Smith and Briggs based upon their denial of his inmate request form regarding the lack of recreation, as well as Defendant Smith's failure to respond to his other requests.  Inmates, however, do not have a constitutional right to a grievance procedure.  See Gerholt v. Wetzel, 858 F. App'x 32, 34 (3d Cir. 2021) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or

---

[2] See Hudson v. McKeesport Police Chief, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming the dismissal of one defendant because the complaint did not provide any basis for a claim against him); Robinson v. Wheary, No. 1:16-cv-2222, 2017 WL 2152365, at *1-2 (M.D. Pa. May 17, 2017) (dismissing the inmate-plaintiff's complaint pursuant to the screening provisions of 28 U.S.C. § 1915(e)(2) where "the caption of the complaint names numerous individual defendants, [but] contains no well-pleaded factual averments relating to these specific defendants in the body of the complaint").

dissatisfaction with the response to an inmate's grievance do not establish the involvement of officials and administrators in any underlying constitutional deprivation.  See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) (finding that "[t]he District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them"); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation).  Plaintiff's claims against Defendants Smith and Briggs regarding the handling of his grievances and request forms will, therefore, be dismissed.

It also appears that Plaintiff may be asserting supervisory liability claims against Defendants Smith and Briggs.  Supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  See Iqbal, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'"  See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  With respect to the second theory of liability, the plaintiff must allege that: "(1) the existing policy or practice created an unreasonable risk of [constitutional] injury; (2) the supervisor was aware that the unreasonable

9

risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." See Beers-Capitol v. Whetzel, 256 F.3d 120, 134 (3d Cir. 2001) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  At a minimum, supervisory liability can be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." See Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

Upon review of Plaintiff's complaint, the Court concludes that it fails to set forth plausible supervisory liability claims against Defendants Smith and Briggs.  The complaint is devoid of allegations that Defendants Smith and Briggs had knowledge of and acquiesced in any alleged constitutional violations by their subordinates. See A.M., 372 F.3d at 586.  Moreover, Plaintiff fails to identify a custom or policy that caused his alleged constitutional injury. See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).  Accordingly, any supervisory liability claims against Defendants Smith and Briggs will also be dismissed.

### 4.      Claim Against Defendant Mendenhall

Plaintiff appears to assert that Defendant Mendenhall violated his rights by not permitting him to use the telephone to call his family about the alleged abuse he suffered at DCP.  (Doc. No. 1 at 13.)  Prisoners, however, "ha[ve] no right to unlimited telephone use." See Washington v. Reno, 35 F.3d 1093, 1099-1100 (6th Cir. 1994) (quoting Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1989)); Randall v. Cty. of Berks, Pa., No. 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) (noting that "a pretrial detainee does not have unfettered telephone access").  The Court, therefore, will dismiss Plaintiff's claim against Defendant Mendenhall.

### 5.  Eighth Amendment Claims

Plaintiff asserts that Defendants' actions violated his Eighth Amendment rights.  (Doc. No. 1 at 15.)  The Eighth Amendment, however, "was designed to protect those convicted of crimes and consequently the [Cruel and Unusual Punishments] Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions."  See Whitley v. Albers, 475 U.S. 312, 318 (1986) (citation and internal quotations omitted).  Therefore, the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until "after sentence and conviction."  See Graham v. Connor, 490 U.S. 386, 392 n.6 (1989).  As noted supra, Plaintiff indicates that he is a pretrial detainee.  The Eighth Amendment, therefore, does not apply in the instant case, and Plaintiff's Eighth Amendment claims will be dismissed.

### 6.  Fourth Amendment Claims

Plaintiff also alleges that Defendants' actions violated his Fourth Amendment rights. (Doc. No. 1 at 15.)  While he does not explicitly indicate what was seized, the Court presumes that he is basing such a claim on the seizure of his copies of inmate request slips he submitted during his incarceration at DCP to address issues concerning his confinement.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  However, "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell."  See Hudson v. Palmer, 468 U.S. 517, 526 (1984).  Thus, the taking of Plaintiff's request slips did not violate the Fourth Amendment, and Plaintiff cannot maintain such a claim.  Cf. Crosby v. Piazza, 465 F. App'x 168, 172 (3d Cir. 2012) (concluding that the inmate-plaintiff could not maintain a Fourth Amendment claim regarding the seizure of certain commissary items during a cell search).

7.     **Fourteenth Amendment Claims**

a.     **Excessive Force**

Plaintiff alleges that on February 23, 2021, Defendant Scott swung a broom at him and hit him on the shoulder.  (Doc. No. 1 at 8.)  He further alleges that on February 25, 2021, Defendants Scott, Weaver, Chaz, and Danner used excessive force against him by throwing him onto the bunk, handcuffing him, punching him in the right eye, kneeing him in the thighs, and spraying him with pepper spray.  (Id. at 10-11.)

Because Plaintiff was a pretrial detainee during all relevant times, the Due Process Clause of the Fourteenth Amendment governs his excessive force claim.  See Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015) (noting that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment" (quoting Graham v. Conner, 490 U.S. 386, 395 n.10 (1989))).  "To demonstrate a due process violation, a detainee must prove 'that the force purposely or knowingly used against him was objectively unreasonable,' meaning 'that the actions [were] not rationally related to a legitimate nonpunitive government purpose.'" Robinson v. Danberg, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting Kingsley, 576 U.S. at 397, 398).  Courts consider the following factors to determine whether an officer used "objectively unreasonable" force:

> (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting.

Id. (quoting Kingsley, 576 U.S. at 397).  The Court's reading of Plaintiff's complaint leads the Court to conclude that Plaintiff has set forth plausible Fourteenth Amendment excessive force

claims against Defendants Scott, Weaver, Chaz, and Danner.  Accordingly, Plaintiff may proceed on those claims.

### b.      Denial of Recreation

Plaintiff alleges further that on February 20-21, 2021, he was "kept in [his] cell for 32 hours against his will" and that various officers, including Defendant Bell, denied him recreation during this time.  (Doc. No. 1 at 7.)  He also avers that on February 23, 2021, he was given only fifty (50) minutes of recreation, despite recreation time generally being an hour long.  (Id. at 8.) "There is no question that meaningful recreation 'is extremely important to the psychological and physical well-being of . . . inmates.'"  Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)).  The Third Circuit, however, has held that the temporary denial of recreation does not constitute a substantial deprivation.  See Barndt v. Wenerowicz, 698 F. App'x 673, 677 (3d Cir. 2017) (concluding that denial of recreation for twenty-eight (28) days did not rise to the level of a constitutional violation); cf. Millhouse v. Arbasak, 373 F. App'x 135, 138 (3d Cir. 2010) (concluding, in the context of a convicted inmate, that "[w]hile the denial of exercise and recreation may result in a constitutional violation, a temporary denial is insufficiently serious to implicate the Eighth Amendment").  The Court, therefore, will dismiss Plaintiff's Fourteenth Amendment due process claims based upon a temporary denial of recreation.

### c.      Loss of Property

Plaintiff avers that he is asserting a claim for seizure of property, presumably the copies of his request slips that he alleges were taken from him.  (Doc. No. 1 at 11.)  However, neither negligent nor intentional deprivations of property by state officials give rise to a due process violation if state law provides adequate post-deprivation remedies.  See Daniels v. Williams, 474

U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional deprivation of property does not violate due process if meaningful post–deprivation remedy for loss is available).  In the instant case, DCP's grievance procedure provided an adequate post-deprivation remedy to Plaintiff.  See Tillman v. Lebanon Cty. Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000).  Pennsylvania state law also provides an adequate remedy for prison officials' unlawful deprivation of inmate property.  See 42 Pa. Cons. Stat. Ann. § 8522(b)(3); see also Shakur v. Coelho, 421 F. App'x 132, 135 (3d Cir. 2011) (noting that the Pennsylvania Tort Claims Act provides adequate remedy for willful destruction of property).  Therefore, Plaintiff's Fourteenth Amendment procedural due process claim regarding the loss of his property is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because Plaintiff cannot state a cognizable constitutional claim.

**B.    Leave to Amend**

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962).  The Court may deny a motion to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.  The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion

to dismiss for failure to state a claim upon which relief may be granted.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, it would be futile to allow Plaintiff to amend the following claims: (1) his claims pursuant to 18 U.S.C. §§ 241 and 242; (2) his claims against Defendants Smith and Briggs regarding their denial of his grievances and request slips; (3) his claim against Defendant Mendenhall regarding the denial of a phone call; (4) his Eighth Amendment claims; (5) his Fourth Amendment claims; and (6) his Fourteenth Amendment claims regarding the temporary denial of recreation and loss of property.  However, the Court cannot conclude that it would be futile or prejudicial to grant Plaintiff leave to file an amended complaint regarding his claims against Defendants Armermann and Clark, as well as any supervisory liability claims against Defendants Smith and Briggs.

Plaintiff is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint should set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts that he claims violated his rights.  Mere conclusory allegations will not set forth a cognizable claim.  If Plaintiff fails to file an amended complaint, the above-captioned action will proceed only as to his excessive force claims against Defendants Scott, Weaver, Chaz, and Danner.

### C.    Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel, noting that his "imprisonment will greatly limit his ability to litigate."  (Doc. No. 6 at 1.)  He avers that the issues are complex "and will

require significant research and investigation." (<u>Id.</u>)  Plaintiff argues that he has "limited access

to the law library and limited knowledge of the law." (<u>Id.</u>)  Plaintiff also asserts that a trial "will

likely involve conflicting testimony and counsel would better enable [him] to present evidence

and cross-examine witnesses." (<u>Id.</u>)

Although prisoners have no constitutional or statutory right to the appointment of counsel

in civil cases, district courts have broad discretionary power to appoint counsel for indigent civil

litigants under 28 U.S.C. § 1915(e)(1).  <u>See</u> <u>Montgomery v. Pinchak</u>, 294 F.3d 492, 498 (3d Cir.

2002).  In <u>Tabron v. Grace</u>, the Third Circuit developed a non-exhaustive list of factors to aid

district courts in determining whether to appoint counsel for such litigants.  <u>See</u> <u>Tabron v. Grace</u>,

6 F.3d 147, 155-57 (3d Cir. 1993).  Such factors include: the plaintiff's ability to present his

case; the complexity of the legal and discovery issues in the case; the amount of factual

investigation that will be required; the necessity of expert witnesses; and whether "witness

credibility is a key issue."  <u>See</u> <u>id.</u>  Additionally, "[a]s a threshold matter, a district court must

assess whether the claimant's case has some arguable merit in fact and law."  <u>See</u> <u>Montgomery</u>,

294 F.3d at 498-99 (citing <u>Tabron</u>, 6 F.3d at 155).  Finally, the plaintiff's ability to present his

case is the most significant consideration, based upon his "education, literacy, prior work

experience, and prior litigation experience . . . along with [his] ability to understand English . . .

[and] the restraints placed upon a prisoner plaintiff by confinement."  <u>See</u> <u>id.</u> at 501 (internal

quotation marks and citations omitted).

The Court concludes that the <u>Tabron</u> factors do not warrant appointing counsel at this

time.  Plaintiff has the apparent ability to read, write, and understand English, as well as the

ability to litigate this action <u>pro se</u>, as demonstrated by his filing of a complaint.  Accordingly,

there is no indication that Plaintiff "presently suffers from any impediment unusual to other <u>pro</u>

16

se litigants that appear before this Court." See Segura v. Wetzel, No. 17-cv-0931, 2017 WL 3495184, at *2 (M.D. Pa. Aug. 14, 2017).  Additionally, this Court's duty to construe pro se pleadings liberally, see Riley v. Jeffes, 77 F.2d 143, 147-48 (3d Cir. 1985), coupled with Plaintiff's apparent ability to litigate this action, militates against the appointment of counsel at this time.  The Court notes further that there is not "a large group of attorneys [that] would represent this action in a pro bono capacity."  See Wilson v. Horowitz, No. 3:18-cv-2237, 2019 WL 6716122, at *1 (M.D. Pa. Dec. 9, 2019).  Finally, with respect to Plaintiff's concerns regarding limited law library access, if Plaintiff requires extensions of time to respond to future pleadings and Orders requiring a response, he may request such from the Court at the appropriate time.  In the event that future proceedings demonstrate the need for counsel, however, the Court may reconsider this matter either sua sponte or upon a motion properly filed by Plaintiff.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant Plaintiff leave to proceed in forma pauperis (Doc. No. 2) and partially dismiss his complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The Court will afford Plaintiff thirty (30) days from the date of the Order accompanying this Memorandum in which to file an amended complaint, consistent with the Court's discussion herein.  If Plaintiff fails to file an amended complaint, the above-captioned action will proceed on his excessive force claims against Defendants Scott, Weaver, Chaz, and Danner.  Plaintiff's motion to appoint counsel (Doc. No. 6) will be denied without prejudice.  An appropriate Order follows.