IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TARAHJAY M. ROSS,<br>     Plaintiff | : | |
| | : | No. 1:21-cv-01994 |
| v. | : | |
| | : | (Judge Kane) |
| CAPTAIN STEVE SMITH, et al.,<br>     Defendants | : | |

## MEMORANDUM

Pending before the Court is a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by some of the Defendants that remain in the above-captioned action. (Doc. No. 15.) For the reasons set forth below, the Court will deny this motion without prejudice. The Court will also direct these Defendants to file a motion for summary judgment in order to address the threshold issue of whether they have met their burden to establish the affirmative defense of Plaintiff Tarahjay M. Ross ("Plaintiff")'s failure to exhaust available administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e, before commencing suit in this Court.[1]

**I.     BACKGROUND**

On November 23, 2021, pro se Plaintiff, who is presently incarcerated as a pretrial detainee at the Franklin County Jail in Chambersburg, Pennsylvania, commenced the above-captioned action by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 against Captain Steve Smith ("Smith"), Lieutenant Greg Mendenhall ("Mendenhall"), Lieutenant Richard Armermann ("Armermann"), Warden Gregory Briggs ("Briggs"), Warden Brian Clark

---

[1] Also pending before the Court are various motions that have been filed by the parties. (Doc. Nos. 17, 21, 23, 25, 26.) The Court will address those motions herein as well.

("Clark"), and Correctional Officers John Scott[2] ("Scott"), Matthew Danner ("Danner"), Cameron Weaver ("Weaver"), George Bell ("Bell"), and First Name Unknown Chaz ("Chaz") concerning events that allegedly occurred while Plaintiff was incarcerated at Dauphin County Prison ("DCP") in Harrisburg, Pennsylvania.  (Doc. No. 1.)   In addition to the complaint, Plaintiff also filed a motion for leave to proceed in forma pauperis (Doc. No. 2) and a motion to appoint counsel (Doc. No. 6).

In the complaint, Plaintiff alleges that from February 20, 2021, until February 21, 2021 he was "kept in [his] cell for 32 hours against [his] will."  (Doc. No. 1 at 7.)  Plaintiff alleges that he told several corrections officers that he had not received his recreation time, and they responded that they would check the cameras, but that there would be consequences if Plaintiff was lying.  (Id.)  Plaintiff alleges that the corrections officers came back "and stated [Plaintiff] was burnt, [and that he] would have to wait until the next day."  (Id.)  Plaintiff alleges that he does not remember the name of all of these corrections officers, but that he does remember Defendant George Bell ("Defendant Bell").  (Id.)  Plaintiff alleges that he asked first shift for the names of the corrections officers on third shift.  (Id.)  However, Plaintiff alleges that those officers told him that they did not know the names of the corrections officers on third shift and, when Plaintiff asked first shift to check the logbook, he was told there was no such thing.  (Id.)

In addition, Plaintiff alleges that, on February 23, 2021, he was told to lock into his cell after being out for fifty (50) minutes despite recreation being an hour long.  (Id. at 8.)  He alleges that he got a broom so that he could sweep out his cell for the last ten (10) minutes, but that Defendant Scott followed him, took the broom, and swung it at him, hitting him on the left

---

[2] Defendants explain that Plaintiff has misnamed Jake Scott as "John Scott" in the complaint. (Doc. No. 15 at 1.)

2

shoulder. (Id.) Plaintiff alleges that he filed a complaint on an inmate request form. (Id.) Plaintiff alleges that, the following day, he had court and took the yellow carbon copies of his inmate request form to tell his Public Defender about what had been occurring at DCP. (Id.) She told Plaintiff "to keep writing them" and that she was "going to send someone to come talk to [him] about the issues [he] was having with the correctional officers." (Id.)

Plaintiff further alleges that, on February 25, 2021, he was let out of his cell at 6:00 a.m. for recreation. (Id.) Plaintiff alleges that he got a tablet from the charging station and that he also placed two (2) more tablets by the door of cell fourteen (14). (Id. at 8-9.) Plaintiff alleges that he then pressed the intercom located by the "P-1 Pod" door entrance and that Defendant Scott answered by stating: "what dummy." (Id. at 9.) Plaintiff alleges that he asked for cell fourteen (14) to be opened so that the inmates could grab their tablets, but that Defendant Scott refused and told Plaintiff that he could lock in. (Id.) Plaintiff responded that he could, but that he had not done anything wrong. (Id.) Plaintiff proceeded to log into the tablet that he had and start a video visit with a contact. (Id.) Plaintiff alleges that, sixty (60) seconds later, Defendant Scott entered the Pod, instructing Plaintiff to lock in. (Id.) Plaintiff alleges that he logged off his visit and started walking towards his cell. (Id.) Plaintiff alleges that Defendant Scott pushed him towards his cell and that, once they arrived at his cell, Defendant Scott told Plaintiff that he was writing him up. (Id.) Plaintiff asked what he was being written up for and Defendant Scott said, "watch this." (Id. at 9-10.)

Plaintiff alleges that, an hour later, Defendants Scott, Weaver, Chaz, and Danner came to his cell with a striped DCP shirt that is used for inmates who are on Restricted Housing Unit status, as well as those who have been written up. (Id. at 10 (acknowledging that he had to "switch clothing" since he was written up).) Plaintiff alleges that these Defendants directed him

3

to strip and to put on the clothes they had for him. (Id.) Plaintiff alleges that he asked them to turn on their body cameras for his safety, but they refused. (Id.) Plaintiff alleges that he stripped down to his boxers, which is where he had placed all of his copies of his request forms. (Id.) Plaintiff alleges that, when he went to retrieve his request forms, Defendants Danner, Weaver, and Chaz grabbed his arm and threw him on the bunk. (Id.) Plaintiff alleges that he was also handcuffed, punched in the right eye several times, kneed in the thighs, and sprayed with pepper spray. (Id. at 10-11.) Plaintiff asserts that his eye was scratched by someone's finger and that he was bleeding between the eyes. (Id. at 11.) Plaintiff also asserts that Defendant Weaver spit on his back. (Id.) Plaintiff alleges that these Defendants turned the cameras on as Plaintiff was screaming that he was not resisting and could not breathe. (Id.)

Plaintiff alleges that he was picked up and was sitting on the side of the bunk when the lieutenant entered his cell. (Id.) He claims that the lieutenant said, "this is ridiculous," and Plaintiff responded, "tell me about it." (Id.) Plaintiff alleges that he asked the lieutenant to make sure that the copies of his request forms were placed in his "laundry/property bag[,]" but claims that they were taken instead. (Id.) Plaintiff alleges that the lieutenant took pictures of his nose and eye, and a nurse came and gave him Motrin for the pain. (Id.) Plaintiff alleges that, the next day, a nurse came to Plaintiff's cell, along with Defendant Danner, and asked Plaintiff what had happened. (Id. at 11-12.) Plaintiff explained the incident and alleges that Defendant Danner "made sure to have his camera on during this." (Id. at 12.)

Additionally, Plaintiff alleges that, on March 4, 2021, he was taken to the "Sheriff's underneath the courthouse." (Id.) Plaintiff alleges that he met with an individual whom his Public Defender scheduled for him to see. (Id.) Plaintiff alleges that this individual took a recorded statement from him and took pictures of his face with an iPhone. (Id.) In addition,

Plaintiff alleges that, on March 22, 2021, he was taken out of his cell to talk to Defendant Smith about not receiving recreation and about the inmate request form that he filed concerning his allegation that he had been "abused." (Id.) Plaintiff alleges that, on April 1, 2021, he was given a form regarding his meeting with Defendant Smith. (Id. at 12-13.) Plaintiff alleges that not once did Defendant Smith mention "any other" request forms that Plaintiff had filed. (Id. at 12-13.) Plaintiff alleges that Defendant Smith told him that he had been unable to review camera footage from the alleged incident because of the amount of time that had passed. (Id. at 13.) Plaintiff alleges that Defendant Smith ultimately found Plaintiff's allegations to be without merit after investigation. (Id.) Plaintiff alleges that he appealed to Defendant Briggs, who "signed off on it." (Id.) In addition, Plaintiff alleges that, after he was "brutally abused," he asked Defendant Mendenhall for a phone call to tell his family what had happened but that Defendant Mendenhall said "no." (Id.) According to Plaintiff, Defendant Mendenhall was required to allow this phone call, even if Plaintiff had been "texting every incident to loved ones on the tablet through the texting app." (Id. at 13-14.)

Plaintiff finally alleges that, on April 22, 2021, he went to court for a bail hearing, during which he told the judge what had happened at DCP. (Id. at 14.) According to Plaintiff, the judge wanted to either give Plaintiff bail or move him to a different jail. (Id.) Plaintiff alleges that, on May 7, 2021, he was transferred from DCP to Franklin County Jail. (Id.)

In connection with all of these allegations, Plaintiff avers that he generally suffers from "anxiety, PTSD, and depression." (Id.) He also avers that he has suffered from the physical injuries noted above, as well as from "mental abuse, migraine headaches, [and] psychological trauma." (Id. at 15.) Based on the foregoing, Plaintiff's complaint asserts violations of his Fourth, Eighth, and Fourteenth Amendment rights, as well as violations of 18 U.S.C. §§ 241 and

5

242.  (Id. at 15.)  As relief, Plaintiff requests monetary damages, as well as "for [his] abusive Defendants to be terminated from their current job titles."  (Id.)

Pursuant to the Prison Litigation Reform Act of 1995,[3] the Court conducted an initial review of Plaintiff's complaint and issued a Memorandum and Order on December 3, 2021, which granted Plaintiff's motion for leave to proceed in forma pauperis, denied without prejudice his motion for the appointment of counsel, and dismissed—in part—his complaint for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  (Doc. Nos. 7, 8.)  More specifically, the Court dismissed all of Plaintiff's claims except for his Fourteenth Amendment excessive force claim against Defendants Scott, Weaver, Chaz, and Danner.  (Id.)  The Court also granted Plaintiff leave to file an amended complaint within thirty (30) days.  (Id.)  The Court cautioned Plaintiff that, if he failed to file an amended complaint within that timeframe, the Court would direct service of the original complaint upon Defendants Scott, Weaver, Chaz, and Danner, and this matter would proceed only on his Fourteenth Amendment claim against those Defendants.  (Id.)

After Plaintiff failed to file an amended complaint in accordance with the Court's December 3, 2021 Memorandum and Order, the Court dismissed with prejudice all claims that had been previously dismissed without prejudice and directed the Clerk of Court to terminate the following Defendants from this action: Smith; Mendenhall; Armermann; Briggs; Clark; and Bell.  (Doc. No. 9.)  In addition, the Court directed the Clerk of Court to serve a copy of the complaint upon the remaining Defendants—i.e., Defendants Scott, Weaver, Chaz, and Danner.  (Id.)

---

[3] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

After waiving service of the complaint (Doc. No. 11), Defendants Scott, Weaver, and Danner ("Moving Defendants") filed a motion to dismiss, along with a brief in support thereof.[4] (Doc. Nos. 15, 16.)  In their motion and briefing, the Moving Defendants raise the following arguments: (1) Defendant Weaver was not present for the alleged incident on February 25, 2021—i.e., the only incident in which Plaintiff alleges his involvement; (2) Plaintiff has not exhausted his available administrative remedies at DCP; (3) Plaintiff's allegations of excessive force have no merit; and (4) the Moving Defendants are entitled to qualified immunity.  (Doc. Nos. 15, 16, 20.)

On June 24, 2022, Plaintiff filed a brief in opposition to the motion to dismiss (Doc. No. 19), and the Moving Defendants subsequently filed a reply to Plaintiff's brief in opposition (Doc. No. 20).  Since then, Plaintiff has filed several motions seeking the appointment of counsel and to compel discovery.  (Doc. Nos. 17, 21, 23, 25.)  The Moving Defendants have filed responses to Plaintiff's various motions.  (Doc. Nos. 18, 22, 24.)  They have also filed a motion to stay discovery in this action, along with a brief in support, pending the Court's resolution of their pending motion to dismiss.  (Doc. Nos. 26, 27.)

For the reasons set forth below, the Court will deny the Moving Defendants' motion to dismiss without prejudice.  The Court will also direct the Moving Defendants to file a motion for summary judgment in order to address the threshold issue of whether they have met their burden to establish the affirmative defense of Plaintiff's failure to exhaust available administrative

---

[4] There is no indication on the Court's docket that service was effectuated upon Defendant Chaz.  As previously explained by the Court, however, if service is unable to be effectuated upon any of the Defendants due to Plaintiff's failure to properly name a Defendant or to provide an accurate mailing address for the Defendants, then Plaintiff would be required to correct this deficiency.  (Doc. No. 9 at 2 ¶ 4 (explaining that failure to comply with that directive may result in dismissal of Plaintiff's claims against such a defendant).)

remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e, before commencing suit in this Court. In addition, the Court will deem Plaintiff's motions seeking discovery withdrawn and will also deny, but without prejudice, Plaintiff's motions seeking the appointment of counsel. Finally, the Court will deny, as moot, the Moving Defendants' motion to stay discovery in this action pending a ruling on their motion to dismiss.

## II.  LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'" See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### III.     DISCUSSION

#### A.     The Moving Defendants' Motion to Dismiss

The Moving Defendants initially, and broadly, argue that "Plaintiff has not exhausted the internal grievance process." (Doc. No. 15 at 3.) In support, the Moving Defendants attach the affidavit of former-Defendant Briggs, who declares as follows: "[n]o appeals were made on any of [Plaintiff's] grievances and, therefore, he failed to follow the established grievance guidelines and exhaust his administrative remedies." (Doc. No. 15-1 at 2 ¶ 6.) In connection with this argument, the Moving Defendants contend that Plaintiff's complaint should be dismissed. (Doc. No. 15 at 3.)

In his brief in opposition to the motion to dismiss, Plaintiff disputes the Moving Defendants' exhaustion argument and contends that he "has exhausted the internal grievance process" at DCP. (Doc. No. 19 at 3 ¶ 6.) In support, Plaintiff alleges that DCP does not have "actual grievances" and that it only has "request forms." (Id.) Plaintiff further alleges that he did, in fact, file those request forms. (Id.)

The Moving Defendants, in turn, have responded to Plaintiff's arguments. (Doc. No. 20.) In their reply brief, they argue that, based "purely on" Plaintiff's own complaint and response, he has conceded that he did not exhaust his administrative remedies at DCP.[5] (Doc. No. 20 at 2.) In support of this argument, the Moving Defendants explain that DCP has a specific grievance policy in effect and that Plaintiff has not complied with it. (Id.) In further support of this argument, the Moving Defendants have attached, for the first time to their reply brief, a

---

[5] Notably, the Moving Defendants do not point to any allegation in the complaint, which would establish that Plaintiff has conceded his failure to exhaust administrative remedies, and the Court notes that no such allegation exists. Instead, the Moving Defendants only point to Plaintiff's brief in opposition, wherein—as stated above—he alleges that he filed request forms. (Doc. No. 19 at 3 ¶ 6.)

document that is titled "Dauphin County Prison Addendum to Revised Inmate Handbook of February 2002." (Doc. No. 20-3.) In connection with this document, the Moving Defendants broadly argue that Plaintiff has not exhausted the process that is set forth in this document. (Doc. No. 20 at 2.)

Having carefully reviewed these arguments, the Court finds that there is a dispute between the parties as to whether Plaintiff exhausted his available administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e, before commencing suit in this Court. The Court also finds, however, that this dispute is not properly before the Court, as it has neither been fully presented nor comprehensively argued by the Moving Defendants. More specifically, the Moving Defendants have not alleged or shown the history of any grievances that Plaintiff may have filed at DCP concerning his remaining Fourteenth Amendment excessive force claim, nor have they submitted any copies of such grievances to the Court.

Additionally, when a district court is ruling on a motion to dismiss, it generally is not permitted to "'consider matters extraneous to the pleadings.'" See Doe v. Princeton Univ., 30 F.4th 335, 342 (3d Cir. 2022) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). Only "where a document is 'integral to or explicitly relied upon in the complaint,' [may it] 'be considered without converting the motion to dismiss into one for summary judgment' under Rule 56." See id. (quoting Doe v. Univ. of Scis., 961 F.3d 203, 208 (3d Cir. 2020)). Here, however, Plaintiff's complaint does not rely upon former-Defendant Brigg's affidavit or the addendum that the Moving Defendants have attached to their briefing in support of their motion to dismiss. Moreover, these documents are not integral to Plaintiff's complaint or to the Fourteenth Amendment excessive force claim that remains against the

11

Moving Defendants. As such, the Court will not consider these documents in the context of the Moving Defendants' motion to dismiss.

Finally, the Court observes that, before it is permitted to rule on factual disputes relevant to the issue of administrative exhaustion, it is required to place the parties on notice that it will consider the same in its role as a fact-finder. See Paladino v. Newsome, 885 F.3d 203, 211 (3d Cir. 2018) (holding "that some form of notice to the parties and an opportunity to respond are needed before a district court elects to resolve factual disputes regarding exhaustion"); Small v. Camden Cty., 728 F.3d 265, 271 (3d Cir. 2013) (holding that district courts may resolve factual disputes regarding exhaustion without the participation of a jury).

As a result, the Court finds several grounds upon which to deny the Moving Defendants' motion to dismiss as it pertains to Plaintiff's purported failure to exhaust his available administrative remedies. That being said, the Court recognizes that the Prison Litigation Reform Act's exhaustion requirement commands that "'[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" See Paladino, 885 F.3d at 207 (quoting 42 U.S.C. § 1997e(a)) (alterations in original). In other words, under that Act, exhaustion of available administrative remedies is a prerequisite for Plaintiff asserting his Fourteenth Amendment excessive force claim against the Moving Defendants in this Section 1983 action. See Ross v. Blake, 578 U.S. 632, 638 (2016) (explaining that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies") (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006))); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under

12

the PLRA and that unexhausted claims cannot be brought in court" (citation omitted)); Porter v. Nussle, 534 U.S. 516, 524 (2002) (stating that "[o]nce within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory . . . [a]ll available remedies must now be exhausted . . . " (citation, internal citation, and internal quotation marks omitted) (alterations added)); Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (stating that the "stringent requirements" of the PLRA are designed to, among other things, "return[ ] control of the inmate grievance process to prison administrators, encourage[ ] the development of an administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e] the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits" (citation and internal quotation marks omitted) (alterations added)).

Accordingly, because exhaustion of available administrative remedies is a prerequisite for Plaintiff's assertion of his Fourteenth Amendment excessive force claim against the Moving Defendants in this Section 1983 action, and because the Moving Defendants are asserting the affirmative defense that Plaintiff has failed to exhaust his available administrative remedies, the Court will deny without prejudice the Moving Defendants' motion to dismiss. The Court will also direct the Moving Defendants to file a motion for summary judgment in order to address the threshold issue of whether they have met their burden to establish Plaintiff's failure to exhaust.[6] See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (stating that "[t]he burden to

---

[6] Given Plaintiff's pro se status in this litigation, it is most prudent to have the Moving Defendants file an all-inclusive motion for summary judgment, accompanied by a brief in support and statement of material facts, on the limited issue of administrative exhaustion, and to have Plaintiff file a response to the Moving Defendants' statement of material facts and brief in opposition.

plead and prove failure to exhaust as an affirmative defense rests on the defendant" (citation omitted)).

### 2. The Moving Defendants' Motion to Stay Discovery

On November 14, 2022, the Moving Defendants filed a motion to stay discovery in this case until the Court rules on their motion to dismiss. (Doc. No. 26.) On that same date, the Moving Defendants also filed a brief in support of their motion. (Doc. No. 27.) Because the Court has addressed the Moving Defendants' motion to dismiss, the Court will deny their motion to stay discovery as moot.

### B. Plaintiff's Pending Motions

### 1. Plaintiff's Motions Seeking Discovery

Plaintiff has filed several motions seeking discovery. (Doc. Nos. 21, 23, 25.) As reflected by the Court's docket, however, Plaintiff has not filed briefs in support of these motions, nor sought an extension of time to do so. Thus, pursuant to Local Rule 7.5 of the Court's Local Rules, his motions seeking discovery are deemed withdrawn. See M.D. Pa. L.R. 7.5 (providing as follows: "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion . . . [i]f a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn").[7]

---

[7] The Court notes that, although Defendants responded to these motions, their responses do not obviate Plaintiff's responsibility under the Local Rules of this Court to file briefs in support of his motions. Further, even if Plaintiff had filed briefs in support of his motions, the Court would still deny his requests for discovery, but without prejudice to him renewing such requests, if necessary, after the Court has ruled on the issue of administrative exhaustion.

### 2. Plaintiff's Motions Seeking the Appointment of Counsel

In addition to his motions seeking discovery, Plaintiff has also filed several motions seeking the appointment of counsel.[8] (Doc. Nos. 17, 23, 25.) The Court previously denied Plaintiff's request for the appointment of counsel in its Memorandum and Order dated December 3, 2021. (Doc. Nos. 7, 8). More specifically, the Court stated as follows:

> Although prisoners have no constitutional or statutory right to the appointment of counsel in civil cases, district courts have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002). In Tabron v. Grace, the Third Circuit developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants. See Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993). Such factors include: the plaintiff's ability to present his case; the complexity of the legal and discovery issues in the case; the amount of factual investigation that will be required; the necessity of expert witnesses; and whether "witness credibility is a key issue." See id. Additionally, "[a]s a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." See Montgomery, 294 F.3d at 498-99 (citing Tabron, 6 F.3d at 155). Finally, the plaintiff's ability to present his case is the most significant consideration, based upon his "education, literacy, prior work experience, and prior litigation experience . . . along with [his] ability to understand English . . . [and] the restraints placed upon a prisoner plaintiff by confinement." See id. at 501 (internal quotation marks and citations omitted).
>
> The Court concludes that the Tabron factors do not warrant appointing counsel at this time. Plaintiff has the apparent ability to read, write, and understand English, as well as the ability to litigate this action pro se, as demonstrated by his filing of a complaint. Accordingly, there is no indication that Plaintiff "presently suffers from any impediment unusual to other pro se litigants that appear before this Court." See Segura v. Wetzel, No. 17-cv-0931, 2017 WL 3495184, at *2 (M.D. Pa. Aug. 14, 2017). Additionally, this Court's duty to construe pro se pleadings liberally, see Riley v. Jeffes, 77 F.2d 143, 147-48 (3d

---

[8] To be clear, in two (2) of Plaintiff's pending motions, he seeks both discovery and the appointment of counsel in each motion. (Doc. Nos. 23, 25.) Because these requests relate to different factual matters and seek separate forms of relief, however, the Court treats these requests as separate motions for purposes of this Memorandum. And, notably, although Plaintiff was required to file briefs in support of his motions seeking discovery, he was not required to file briefs in support of his motions seeking the appointment of counsel. See M.D. Pa. L.R. 7.5 (explaining that a brief does not need to be filed in support of a motion seeking the appointment of counsel).

> Cir. 1985), coupled with Plaintiff's apparent ability to litigate this action, militates against the appointment of counsel at this time. The Court notes further that there is not "a large group of attorneys [that] would represent this action in a pro bono capacity." See Wilson v. Horowitz, No. 3:18-cv-2237, 2019 WL 6716122, at *1 (M.D. Pa. Dec. 9, 2019). Finally, with respect to Plaintiff's concerns regarding limited law library access, if Plaintiff requires extensions of time to respond to future pleadings and Orders requiring a response, he may request such from the Court at the appropriate time. In the event that future proceedings demonstrate the need for counsel, however, the Court may reconsider this matter either sua sponte or upon a motion properly filed by Plaintiff.

(Doc. No. 7 at 15-17.)

While the Court recognizes that Plaintiff may certainly face challenges in this litigation, as he is a prisoner proceeding pro se, the Court finds that there has been no significant change in circumstances since it denied his prior request for the appointment of counsel such that a different result is warranted now. Moreover, since Plaintiff's prior request was denied, he has filed a response to the Moving Defendants' motion to dismiss, several motions for discovery, and renewed requests for the appointment of counsel. Accordingly, the Court will deny without prejudice Plaintiff's renewed motions for the appointment of counsel. As stated previously by the Court, should future proceedings demonstrate the need for counsel, the Court may reconsider this matter either sua sponte or upon a motion properly filed by Plaintiff.

## IV. CONCLUSION

For all of the foregoing reasons, the Court will deny without prejudice the Moving Defendants' motion to dismiss. The Court will also direct the Moving Defendants to file a motion for summary judgment in order to address the threshold issue of whether they have met their burden to establish the affirmative defense of Plaintiff's failure to exhaust available administrative remedies in accordance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e, before commencing suit in this Court. In addition, the Court will deny as moot the Moving

Defendants' motion to stay discovery in this matter. Finally, the Court will deem Plaintiff's motions seeking discovery withdrawn and will deny without prejudice Plaintiff's motions seeking the appointment of counsel. An appropriate Order follows.