**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TARAHJAY M. ROSS,** | : | |
| **Plaintiff** | : | **No. 1:21-cv-01994** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **CAPTAIN STEVE SMITH, <u>et al.</u>,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

The Court ordered pro se Plaintiff Tarahjay M. Ross ("Ross") to show cause why the Court should not dismiss this action for lack of prosecution.  For the reasons set forth below, the Court will dismiss this case with prejudice for lack of prosecution.

## I.    BACKGROUND

Ross commenced this action by filing a complaint, an application for leave to proceed <u>in forma pauperis</u> ("IFP Application"), a prisoner trust fund account statement, and a motion to appoint counsel, all of which the Clerk of Court docketed on November 23, 2021.  (Doc. Nos. 1–3, 6.)[1]  In the complaint, Ross names several Dauphin County Prison ("DCP") employees as Defendants, including: (1) Warden Gregory Briggs ("Briggs"); (2) Warden Brian Clark ("Clark"); (3) Captain Steve Smith ("Smith"); (4) Lieutenant Greg Mendenhall ("Mendenhall"); (5) Lieutenant Richard Armermann ("Armermann"); (6) Scott; (7) Danner; (8) Weaver; (9) Correctional Officer Chaz ("Chaz"); and (10) Correctional Officer George Bell ("Bell").  (<u>Id.</u> at 1–6.)[2]  Ross's allegations against Defendants pertain to events that allegedly occurred while he

---

[1]  At the time he filed his complaint, Ross was a pretrial detainee incarcerated in the Franklin County Jail.  (Doc. No. 1 at 2.)

[2]  Ross indicates in his complaint that he does not know Chaz's first name.  (<u>Id.</u> at 14.)  Ross also mistakenly identifies Scott's first name as "John" and Weaver's first name as "Cameron" in the complaint.  <u>See</u> (<u>id.</u> at 4).

was incarcerated as a pretrial detainee at DCP between February 20, 2021, and late March/early April 2021 (Id. at 2, 7–14.)[3] Based on these factual allegations, Ross raises claims against Defendants under 42 U.S.C. § 1983 for violations of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. (Id. at 1, 4, 15.) Ross also references 18 U.S.C. §§ 241–42 and Pennsylvania's Protection from Abuse Act, 23 Pa. C.S. § 6102 in his complaint. (Id. at 15.) For relief, Ross seeks monetary damages and an injunction terminating Defendants from their employment at DCP. (Id.)

After reviewing the IFP Application and screening Ross's complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B), this Court issued a Memorandum and Order on December 3, 2021, which, inter alia: (1) granted the IFP Application; (2) dismissed with prejudice Ross's claims (a) pursuant to 18 U.S.C. §§ 241–42, (b) against Smith and Briggs regarding their denial of his grievances and request slips, (c) against Mendenhall pertaining to the denial of a phone call, (d) under the Eighth and Fourteenth Amendments, and (e) under the Fourteenth Amendment relating to the temporary denial of recreation and loss of property; (3) permitted Ross to proceed on his excessive force claims against Scott, Weaver, Chaz, and Danner; (4) dismissed Ross's other claims without prejudice to him reasserting them in an amended complaint that he could file within thirty (30) days; and (5) denied without prejudice Ross's first motion for appointment of counsel. (Doc. Nos. 7, 8.) Ross did not file an amended complaint. As such, the Court issued an Order on April 5, 2022, which, inter alia: (1) deemed all claims that the Court dismissed

---

[3] Ross's allegations include that, inter alia: (1) Smith and Briggs wrongfully denied his grievances and inmate request slips; (2) he was confined to his cell (and refused recreational time) against his will for thirty-two (32) hours from February 20–21, 2021; (2) Scott hit his left shoulder with a broom on February 23, 2021; (3) Scott, Weaver, Chaz, and Danner assaulted him on February 25, 2021; (4) Mendenhall did not permit him to make a phone call following the February 25, 2021 assault. (Id. at 7–8.)

without prejudice to be dismissals with prejudice; (2) directed the Clerk of Court to terminate Smith, Mendenhall, Armermann, Briggs, Clark, and Bell as Defendants on the docket; (3) directed the Clerk of Court to send waiver of service forms to Scott, Weaver, Danner, and Chaz; and (4) pointed out that the only surviving claims were Ross's Section 1983 Fourteenth Amendment excessive force claims against Scott, Weaver, Danner, and Chaz relating to the acts that allegedly occurred in DCP on February 23, 2021, and February 25, 2021. (Doc. No. 9.)

Scott, Danner, and Weaver waived service (Doc. No. 11),[4] and they filed a motion to dismiss the complaint along with a brief in support of the motion on June 3, 2022. (Doc. Nos. 15, 16.) Ten (10) days later, on June 13, 2022, Ross filed his second motion for appointment of counsel (Doc. No. 17), to which Defendants[5] filed a response in opposition on June 14, 2022 (Doc. No. 18). Ross then filed a brief in opposition to the motion to dismiss on June 24, 2022 (Doc. No. 19), and Defendants filed a reply brief in further support of their motion to dismiss on June 29, 2022 (Doc. No. 20).

On August 31, 2022, Ross filed a motion for discovery (Doc. No. 21), to which Defendants filed a response in opposition on September 14, 2022 (Doc. No. 22). On October 12, 2022, Ross filed an "Omnibus Motion," in which he moved for appointment of counsel for a third time and moved for an order compelling Defendants to produce discovery to him. (Doc. No. 23.) Defendants filed a response in opposition to Ross's "Omnibus Motion" on October 17,

---

[4] In their waiver, Defendants noted that Ross misidentified Scott's first name as "John" in his complaint, when it should have been "Jake." See (Doc. No. 11 at 1). In addition, Chaz did not waive service, and when counsel noticed their appearances on behalf of Scott, Danner, and Weaver, they did not mention Chaz in those notices. (Id.; Doc. Nos. 12, 13.) The Court also notes that the envelope containing the waiver of service form sent to Chaz was returned as undeliverable because the DCP said it had "no such employee." See (Doc. No. 14).

[5] Unless otherwise noted, "Defendants" refers to only Scott, Weaver, and Danner.

3

2022.  (Doc. No. 24.)  Ross then filed his fourth motion for appointment of counsel on November 9, 2022 (Doc. No. 25), to which Defendants filed a response in opposition on November 17, 2022 (Doc. No. 28).  Defendants also filed a motion to stay discovery pending resolution of their motion to dismiss, along with a supporting brief, on November 14, 2022. (Doc. Nos. 26, 27.)

This Court issued a Memorandum and Order resolving Defendants' motion to dismiss and Plaintiff's various motions on December 12, 2022.  (Doc. Nos. 29, 30.)  The Court denied Defendants' motion to dismiss without prejudice and directed them to file a motion for summary judgment on the limited issue of whether Ross exhausted his administrative remedies under the Prison Litigation Reform Act ("PLRA").  (Doc. No. 30 at 1.)  The Court also deemed Ross's motions seeking discovery withdrawn due to his failure to file a supporting brief in accordance with Local Rule 7.5, denied without prejudice Ross's three (3) motions for appointment of counsel, and denied as moot Defendants' motion seeking a stay of discovery.  (Id. at 1–2.)

Ross filed another "Omnibus Motion" in which he moved for the appointment of counsel for the fifth time and asserted various arguments in response to Defendants' prior filings on January 4, 2023.  (Doc. No. 32.)  On January 9, 2023, the Court issued an Order denying Ross's fifth motion for appointment of counsel for the reasons stated in the December 12, 2022 Memorandum.  (Doc. No. 33.)

Defendants filed a motion for a stay of discovery until the Court ruled on their upcoming motion for summary judgment along with a supporting brief on January 9, 2023.  (Doc. Nos. 34, 35.)  Two (2) days later, Defendants filed a motion for summary judgment, statement of material facts in support of the motion, and a supporting brief.  (Doc. Nos. 36–38.)  Ross filed a brief in opposition to the motion for summary judgment, a response to Defendants' statement of material

facts, and supporting exhibits on February 6, 2023. (Doc. Nos. 39–42.) Defendants then filed a reply brief in further support of their motion for summary judgment on February 16, 2023. (Doc. No. 43.)

On February 27, 2023, the Court issued an Order granting Defendants' motion to stay discovery until the resolution of their motion for summary judgment. (Doc. No. 44.) On October 4, 2023, the Court entered a Memorandum and Order resolving Defendants' motion for summary judgment. (Doc. Nos. 49, 50.) The Court granted the motion as to Ross's Fourteenth Amendment excessive force claim against Scott for allegedly pushing him as Ross walked to his cell on February 25, 2021, but denied the motion in all other respects. (Doc. No. 50 at 1.) Consequently, Ross's remaining claims are Fourteenth Amendment excessive force claims for (1) Scott allegedly hitting him with a broom on February 23, 2021, and (2) Defendants using excessive force against him while in his cell to conduct the strip search on February 25, 2021. (Id.)

On October 31, 2023, Ross submitted a letter titled "Name Correction for Following Defendants," in which he sought to change John Scott's name to "Jake Scott," Cameron Weaver's name to "Austin Weaver," and Chaz to "Jason Shay." (Doc. No. 51.) Almost a month later, Ross filed his sixth motion for appointment of counsel and a supporting brief. (Doc. Nos. 52, 53.) Defendants filed a response in opposition to Ross's sixth motion for appointment of counsel on December 12, 2023. (Doc. No. 54.)

On March 26, 2024, Ross filed a letter in which he requested a ninety (90)-day extension of time to complete discovery, which was scheduled to close on April 4, 2024. (Doc. No. 55.) On April 1, 2024, the Court issued an Order directing Defendants to file a response to Ross's motion. (Doc. No. 56.) The following day, Defendants submitted a letter in which they

5

indicated that they did not oppose Ross's request for a ninety (90)-day extension of the discovery deadline. (Doc. No. 57.)

On April 3, 2024, new counsel entered appearances on behalf of Scott and Danner (Doc. Nos. 58–61), which meant that they were now proceeding with different counsel than Weaver. On April 5, 2024, Scott and Danner filed a response to the Court's April 1, 2024 Order in which they indicated that they did not oppose the extension of the discovery deadline by ninety (90) days and requested a similar extension of the dispositive motions deadline. (Doc. No. 62.) They also filed a motion for additional time to file their answer to the complaint. (Doc. No. 64.) On the same date, Weaver filed a letter in which he also requested an extension of the dispositive motions deadline. (Doc. No. 63.)

Weaver filed an answer and affirmative defenses to the complaint on April 12, 2024. (Doc. No. 65.) Four (4) days later, the Court issued two Orders. (Doc. Nos. 67, 68.) In the first Order, the Court granted Scott and Danner's motion for an extension of time to file an answer to the complaint and extended the time for them to file their answer until May 13, 2024. (Doc. No. 67.) In the second Order, the Court granted the parties' letter requests to extend the discovery and dispositive motions deadlines by ninety (90) days and established a new schedule in accordance with the extensions of those deadlines. (Doc. No. 68.)

On April 18, 2024, the Court issued an Order denying without prejudice Ross's sixth motion for the appointment of counsel. (Doc. No. 69.) On the same date, Weaver filed a motion to take Ross's deposition (Doc. No. 70), which the Court granted the following day (Doc. No. 71.)

On May 3, 2024, Ross filed a letter in which he pointed out that he filed a request to change the names of three (3) of Defendants, which had not been addressed. (Doc. No. 72.) Ross requested that the Court resolve this issue. (Id.)

On May 13, 2024, Scott and Danner filed their second motion for an extension of time to file an answer to the complaint. (Doc. No. 73.) Three (3) days later, Ross filed a "Formal Request to Change the Following Defendants [sic] Names," in which he again sought to change the full names of Scott, Weaver, and Chaz. (Doc. No. 74.) Ross also filed a request for an extension of time to file responses to Defendants' written discovery. (Doc. No. 75.)

The Court issued an Order on May 29, 2024, which, inter alia, granted Scott and Danner's second motion for an extension of time to file their answer to the complaint, directed Defendants to file responses to Ross's request to change three (3) of their names, and denied Ross's request for an extension of time to file responses to Defendants' written discovery without prejudice to him refiling it should he still need an extension closer to the discovery deadline (which was not until July 3, 2024). (Doc. No. 76.)

Scott and Danner filed their answer and affirmative defenses to the complaint on June 3, 2024. (Doc. No. 77.) Two (2) days later, Defendants separately filed responses to Ross's requests to change names. (Doc. Nos. 78, 79.) Weaver also filed a motion to dismiss Ross's claims against Chaz (Doc. No. 80), for which he filed a supporting brief on June 7, 2024 (Doc. No. 81).

On August 7, 2024, Danner and Scott filed a motion seeking additional time to file responses to Ross's written discovery as well as an extension of the deadline for filing dispositive motions. (Doc. No. 82.) The Court issued an Order on August 28, 2024, granting this motion, extending the time for Danner and Scott to respond to Ross's written discovery to

7

October 4, 2024, and extending the dispositive motions deadline to November 15, 2024.  (Doc. No. 83.)

Ross filed his seventh motion to appoint counsel on September 23, 2024 (Doc. No. 87), and Defendants filed a brief in opposition to the motion on October 7, 2024 (Doc. No. 88). Then, on November 15, 2024, Defendants separately filed their motions for summary judgment, statements of material facts, and supporting briefs.  (Doc. Nos. 90–95.)  In support of their motions, Defendants also separately filed exhibits consisting of thumb drives containing video recordings of what occurred in Ross's cell on February 25, 2021.  (Doc. Nos. 97–98.)

On February 4, 2025, counsel for Danner and Scott docketed a letter in which they informed the Court that Ross had not received the video recordings they attached as exhibits to their motion for summary judgment.  (Doc. No. 99.)  As such, they requested that the Court delay resolving their motion for summary judgment until they could arrange with officials at Ross's place of incarceration—Pennsylvania State Correctional Institution Waymart—to have Ross view the exhibits.  (Id. at 1.)  Though a letter dated March 5, 2025, Danner and Scott's counsel informed the Court that Ross viewed their video exhibits, and they attached to the letter a signed verification from Ross indicating that he viewed those video exhibits.  (Doc. No. 100.) They also requested that the Court treat March 5, 2025, as the filing date for their motion, which would give Ross until March 24, 2025, to file a response in opposition to their motion pursuant to Local Rule 7.6.  (Id. at 1.)

On March 24, 2025, this Court entered an Order which, inter alia: (1) construed Ross's letter requests to amend his complaint to change the full names of Scott, Weaver, and Chaz as motions to amend his complaint and deemed them withdrawn due to Ross's failure to file briefs in support of the requests in accordance with Local Rule 7.5; (2) amended the complaint to

change Scott's first name to Jake and Weaver's first name to Austin, and directed the Clerk of Court to note these changes on the docket; (3) provided Ross with thirty (30) days to file a proper motion to amend his complaint to the extent he wanted to change Chaz's name and admonished him that if he did not file such a motion, the Court would dismiss his excessive-force claim against Chaz; (4) denied without prejudice Weaver's motion to dismiss Ross's excessive-force claim against Chaz; (5) denied without prejudice Ross's seventh motion for appointment of counsel; and (6) directed Defendants to inform the Court whether the deadline for Ross to file responses to their motions for summary judgment should be extended. (Doc. No. 101.) In response to this Order, Scott and Danner indicated that no further extension of time beyond March 24, 2025 was needed, and Weaver responded that no further extension of time was needed. (Doc. Nos. 102, 103.)

Danner and Scott filed a reply brief in further support of their motion for summary judgment on July 15, 2025. (Doc. No. 107.) Although it was titled as a reply brief, Danner and Scott argued in their brief that Ross's failure to file a response to their statement of material facts and supporting brief demonstrated that he did not oppose their motion for summary judgment and, as such, it should be granted as uncontested. (Id. at 6–7.) They also argued that, in the alternative, the Court should dismiss Ross's claims against them under Rule 41(b) of the Federal Rules of Civil Procedure for his failure to prosecute. (Id. at 7–13.)

On August 1, 2025, Ross filed a motion for an extension of time to file a brief in response to Defendants' motions for summary judgment along with his eighth motion to appoint counsel. (Doc. No. 108.) In his motion, Ross represented that he would secure his release from state incarceration within the next thirty (30) days and, as such, he requested that the Court extend "all deadlines" for forty-five (45) days so he could secure counsel after his release. See (id. at 2).

Ross also argued that the Court should not dismiss his claims for failure to prosecute under Rule 41(b).  (Id.)  Defendants separately filed briefs in opposition to Ross's joint motion on August 15, 2025, and September 3, 2025.  (Doc. Nos. 109, 110.)

On October 16, 2025, the Court issued an Order denying without prejudice Ross's eighth motion to appoint counsel.  (Doc. No. 111.)  The Clerk of Court sent this Order to Ross at his address of record, which was at Pennsylvania State Correctional Institution Waymart ("SCI Waymart").  (Id.); see also M.D. Pa. L.R. 83.18 ("Service of any notices, copies of pleadings, motions or papers in the action at the address currently maintained on file in the clerk's office by a party shall be deemed to be effective service upon such party.").  The envelope containing this Order was returned to the Clerk of Court as undeliverable on October 29, 2025, and the front of the envelope states that Ross was paroled on September 24, 2025.  (Doc. No. 112.)[6]

On November 20, 2021, the Court issued an Order which, inter alia, pointed out that Ross had not updated his mailing address with the Clerk of Court as required by the Local Rules. (Doc. No. 114 at 2 (citing M.D. Pa. L.R. 83.18; Doc. No. 5 at 1)).  The Court also explained that because of this failure, it appeared that Ross did not intend to continue prosecuting this lawsuit. As such, the Court ordered him to show cause why the Court should not dismiss the case with prejudice for lack of prosecution after balancing the six (6) factors set forth in Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984).  (Id. at 2, 3.)  The Court provided Ross with a period of twenty-one (21) days from the date of the Order, i.e. until Thursday, December 11, 2025), to file a response, and admonished him that if he did not file a response, the Court

---

[6]  The Pennsylvania Board of Probation and Parole's Supervised Individual Locator (https://inmatelocator.cor.pa.gov) also indicates that Ross was paroled on September 24, 2025.

would deem him to be unopposed to the dismissal of this action with prejudice for his failure to prosecute.  (Id. at 2–3.)

The deadline for Ross's response has passed without him filing a response or seeking an extension of time to do so.  As such, the issue of whether this action should be dismissed with prejudice for Ross's failure to prosecution is ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action for failure of a plaintiff "to prosecute or to comply with these rules or a court order[.]"  See Fed. R. Civ. P. 41(b).  District courts also have the inherent power to dismiss an action sua sponte for failure to prosecute.  See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991); see also R & C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC, 45 F.4th 655, 661 (3d Cir. 2022) (stating that "[c]ourts possess inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" and that "[t]his includes the authority to dismiss a case for lack of prosecution" (citation, internal citation, and internal quotation marks omitted)).

When determining whether to dismiss an action with prejudice for a plaintiff's failure to prosecute under Rule 41(b), the Court considers and balances the following six (6) factors set forth by the Third Circuit Court of Appeals in Poulis v. State Farm Fire and Casualty Company, 747 F.2d 863 (3d Cir. 1984):

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

See id. at 868–70; see also Spain v. Gallegos, 26 F.3d 439, 454–55 (3d Cir. 1994) ("Ordinarily, when a court is determining sua sponte or upon motion of a defendant whether to dismiss

because of a plaintiff's failure to prosecute" the court must consider the <u>Poulis</u> factors).[7]

However, no single factor is dispositive, and not all factors must be satisfied for the Court to

_____

[7] In a nonprecedential opinion, the Third Circuit Court of Appeals explained that even though district courts should ordinarily apply <u>Poulis</u> when considering whether to dismiss an action with prejudice for failure to prosecute, "when a litigant's conduct makes adjudication of the case impossible, such balancing under <u>Poulis</u> is unnecessary." <u>See</u> <u>McLaren v. N.J. Dep't of Educ.</u>, 462 F. App'x 148, 149 (3d Cir. 2012) (unpublished) (citing <u>Guyer v. Beard</u>, 907 F.2d 1424, 1429–30 (3d Cir. 1990) and <u>Spain</u>, 26 F.3d at 454–55). The Third Circuit identified a plaintiff's failure to provide the court with an up-to-date address as an example of a litigant's conduct making a case impossible to adjudicate. <u>See</u> <u>id.</u> In these circumstances,

> although courts are normally required to consider whether a lesser sanction would be appropriate (when applying <u>Poulis</u>), "[t]he district court could not contact [the plaintiff] to threaten [them] with some lesser sanction. An order to show cause why dismissal was not warranted or an order imposing sanctions would only find itself taking a round trip tour through the United States mail."

<u>See</u> <u>id.</u> (quoting <u>Carey v. King</u>, 856 F.2d 1439, 1441 (9th Cir. 1988)) (alterations in original). Following this reasoning, the Third Circuit concluded that it was not an abuse of discretion for a district court to dismiss a "case as a sanction for [the plaintiff's] failure to provide the Court with an accurate mailing address." <u>See</u> <u>id.</u>

Several district courts have adopted the Third Circuit's reasoning and dismissed actions with and without prejudice for failure to prosecute without considering <u>Poulis</u> where the plaintiff failed to update their address. <u>See, e.g.</u>, <u>Patel v. Benjamin</u>, No. 23-cv-00972, 2023 WL 11983380, at *2 (M.D. Pa. Nov. 2, 2023) (explaining that because of "the plaintiff's failure to provide the court with an appropriate current address . . ., neither the court nor the defendant has any way to communicate with the plaintiff making it impossible to move this litigation forward" and determining that dismissal of the action without prejudice was warranted "because the plaintiff abandoned her affirmative obligation of updating the court as to her address" (citing <u>Capozzi v. Catering By Marlins, Inc.</u>, No. 17-cv-02413, 2021 WL 5504753, at *1–2 (M.D. Pa. Oct. 20, 2021), <u>report and recommendation adopted</u>, 2021 WL 5494317 (M.D. Pa. Nov. 23, 2021)); <u>Welch v. City of Philadelphia</u>, No. 11-cv-04670, 2012 WL 1946831, at *4 (E.D. Pa. May 30, 2012) (dismissing action with prejudice for lack of prosecution and explaining that "when neither the Court nor opposing counsel can reach the plaintiff because he has not furnished an up-to-date address . . ., and when plaintiff has not responded to his opponents' allegations regarding his failure-to-prosecute . . ., we have no choice but to act on the information before us; Plaintiff has, in essence, made adjudication of the case impossible."). Here, even assuming the persuasiveness of this line of reasoning, the Court would consider the <u>Poulis</u> factors before dismissing this case for lack of prosecution because of the possible application of the statute of limitations if Ross were to try to refile this case. <u>See, e.g.</u>, <u>Hernandez v. Palakovich</u>, 293 F. App'x 890, 894 n.8 (3d Cir. 2008) (unpublished) (explaining that district courts must apply <u>Poulis</u> where "a pro se litigant's right to bring suit may well be irretrievably lost if the dismissal

dismiss an action.  See Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992); Briscoe v. Klaus,

538 F.3d 252, 263 (3d Cir. 2008) (stating that "we have also made it clear that 'not all of the

Poulis factors need be satisfied in order to dismiss a complaint'" (quoting Mindek, 964 F.2d at

1373)).  Nevertheless, because "'dismissals with prejudice . . . are drastic sanctions' . . . it is

imperative that the District Court have a full understanding of the surrounding facts and

circumstances pertinent to the Poulis factors before it undertakes its analysis."  See Briscoe, 538

F.3d at 258 (quoting Poulis, 747 F.2d at 867–68).

## III.    DISCUSSION

As indicated above, Ross has not responded to the Court's Order directing him to show

cause why the Court should not dismiss this action with prejudice for lack of prosecution.  He

has also not updated his mailing address with the Clerk of Court.  Therefore, the Court deems

Ross to be unopposed to the dismissal of this action with prejudice for lack of prosecution and

will dismiss this action with prejudice.

Although the Court will dismiss this action because of Ross's failure to respond to the

Order to Show Cause, dismissal of this action with prejudice would be appropriate even if the

Court reviewed and balanced each of the six Poulis factors.  The first factor is the extent of the

party's personal responsibility.  Here, Ross is personally responsible for his failure to prosecute.

He is prosecuting this matter in a pro se capacity and has no one else to blame for his failure to

act in this case.  See Briscoe, 538 F.3d at 258–59 ("[I]t is logical to hold a pro se plaintiff

personally responsible for delays in [their] case because a pro se plaintiff is solely responsible for

---

stands"); Davis v. Giorla, No. 14-cv-06629, 2016 WL 6905387, at *1 (E.D. Pa. Nov. 22, 2016)
(explaining that balancing Poulis factors was needed because any dismissal would be with
prejudice due to statute of limitations bar).

the progress of [their] case . . . ."); <u>see also</u> <u>Clarke v. Nicholson</u>, 153 F. App'x 69, 73 (3d Cir. 2005) (unpublished) ("[U]nlike a situation where dismissal is predicated upon an attorney's error, the plaintiff here was pro se and directly responsible for her actions and inaction in the litigation.").  In addition, upon filing his complaint in this case, Ross received notice of his obligation to update his address and the possibility that this case could be dismissed if he failed to do so:

> ***Change-of-address notice***. Local Rule of Court 83.18 requires pro se plaintiffs to keep the court informed of their current address.  If your address changes while your lawsuit is being litigated, you must immediately inform the court of the change in writing.  By signing and submitting the complaint form, you agree to provide the Clerk's Office with any changes to your address where case-related papers may be served, and you acknowledge that your failure to keep a current address on file with the Clerk's Office may result in dismissal of your case.

<u>See</u> (Doc. No. 2-2 at 3–4).[8]  Therefore, since Ross is personally responsible for failing to prosecute this case, agreed to update his address with the Clerk of Court, and had notice that he risked dismissal of this case if he failed to update his address, this first factor weighs heavily in favor of dismissal.

The second factor is the extent of prejudice to Defendants caused by Ross's failure to prosecute.  "Generally, prejudice includes the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Briscoe</u>, 538 F.3d at 259 (citation and internal quotation marks

---

[8]  Local Rule 83.18 states in pertinent part as follows:

> Whenever a party by whom or on whose behalf an initial paper is offered for filing is not represented in the action, such party shall maintain on file with the clerk a current address at which all notices and copies of pleadings, motions or papers in the action may be served upon such party.

<u>See</u> M.D. Pa. L.R. 83.18.

omitted).  Prejudice, however, "is not limited to irremediable or irreparable harm.  It also includes the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy."  See id. (citations and internal quotation marks omitted).  Here, Defendants are prejudiced by Ross's failure to update his address because, if the Court were to deny their motions for summary judgment in their entirety or in part, it would be impossible for them to proceed with this case.  See Dorsey v. Marsh, No. 23-cv-01390, 2023 WL 8259259, at *1 (M.D. Pa. Nov. 29, 2023).  Moreover, it would be a waste of their counsel's time to prepare for a trial without a plaintiff.  Thus, the second factor weighs in favor of dismissal.

The third factor is whether Ross has a history of dilatoriness.  A court can find a pattern of dilatoriness where there has been "extensive or repeated delay or delinquency . . . such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders."  See Adams v. Trustees of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 873–74 (3d Cir. 1994).  Here, Ross generally continued to prosecute this case for almost four (4) years, until his state parole on September 24, 2025.  However, the only action Ross has taken in this case in more than a year is when he filed his out-of-time omnibus motion for an extension of time to file briefs in opposition to the motions for summary judgment along with his eighth motion to appoint counsel.  As such, Ross's diligent efforts in prosecuting his case over most of the duration of the case is balanced against his lack of activity over the past year.  Therefore, the Court finds this factor to be neutral.

The fourth factor is whether Ross's conduct was willful or in bad faith.  In evaluating this factor, the Court must determine whether the conduct at issue reflects mere inadvertence or negligence, or conversely, whether it is "the type of willful or contumacious behavior which [can be] characterized as 'flagrant bad faith.'"  See Scarborough v. Eubanks, 747 F.2d 871, 875 (3d

15

Cir. 1984) (citing <u>Nat'l Hockey League v. Metro. Hockey Club, Inc.</u>, 427 U.S. 639, 643 (1976)).

There is nothing in the record to indicate that Ross's failure to update his address constitutes

mere inadvertence or negligence, but the Court cannot similarly ascertain whether this conduct

demonstrates flagrant bad faith.  Ross has been "silent, and . . . silence is ambiguous."  <u>See</u> <u>El-</u>

<u>Hewie v. Paterson Pub. Sch. Dist.</u>, No. 13-cv-5820, 2015 WL 5306255, at *4 (D.N.J. Sept. 10,

2015).  As such, the Court finds that this factor is neutral.

 The fifth factor is the effectiveness of sanctions other than dismissal.  "[S]anctions less

than dismissal [are] ineffective when a litigant . . . is proceeding pro se and in forma pauperis."

<u>Lopez v. Cousins</u>, 435 F. App'x 113, 116 (3d Cir. 2011) (unpublished); <u>see also</u> <u>Briscoe</u>, 538

F.3d at 262–63 ("[W]here a plaintiff is proceeding pro se, and moreover, is proceeding <u>in</u> <u>forma</u>

<u>pauperis</u>, we have upheld the District Court's conclusion that no alternative sanctions existed

because monetary sanctions, including attorney's fees, 'would not be an effective alternative.'"

(quoting <u>Emerson v. Thiel Coll.</u>, 296 F.3d 184, 191 (3d Cir. 2002))).  Here, Ross is proceeding <u>in</u>

<u>forma</u> <u>pauperis</u> (Doc. No. 17), so the threat of monetary compliance (including fines, costs, or

payment of attorney's fees) is unlikely to prompt compliance.  Therefore, this factor weighs in

favor of dismissal.

 The sixth and final factor is the meritoriousness of Ross's claims in his complaint.  When

evaluating this factor, courts generally apply the Rule 12(b)(6) standard for addressing motions

to dismiss, and this Court already determined that Ross's Eighth Amendment excessive force

allegations against Defendants are sufficient to survive a Rule 12(b)(6) motion to dismiss.  <u>See</u>

(Doc. No. 50 at 1).  Thus, this factor weighs at least in part against dismissal even though

Defendants' briefs in support of their motions for summary judgment raise strong arguments in

favor of the Court granting them summary judgment on Ross's Eighth Amendment claims.

After this review of the <u>Poulis</u> factors, the Court must balance them in determining whether dismissing this action with prejudice for lack of prosecution is warranted.  When balancing the <u>Poulis</u> factors, there is no "magic formula" or mathematical calculation used to direct a particular result.  See <u>Briscoe</u>, 538 F.3d at 263.  Also, as stated above, "no single <u>Poulis</u> factor is dispositive," and that "not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint."  <u>See</u> <u>Ware</u>, 322 F.3d at 222; <u>Mindek</u>, 964 F.2d at 1373.  In balancing the factors here, the Court is mindful that dismissal "is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits."  See <u>Liggon-Reading v. Est. of Sugarman</u>, 659 F.3d 258, 260 n.1 (3d Cir. 2011) (citations omitted).

In this case, the first, second, and fifth factors weigh heavily in favor of dismissal.  The third and fourth factors are neutral, and the only factor weighing against dismissal, at least in part, is the sixth factor.  Although the Court recognizes that Ross has alleged claims with possible merit and was actively involved in this case for a few years, there are simply no alternative sanctions that would adequately punish him, and the case cannot proceed without his participation and an address to which Defendants and the Court can communicate with him.  The Court has endeavored not to dismiss this action by searching for Ross's current mailing address through docket searches and other websites.  Unfortunately, this search has been unsuccessful.  Overall, since he was paroled, Ross has shown no intent to prosecute this case, despite him lacking any of the limitations that accompanied him while he was incarcerated.  Therefore, the Court finds that even if the <u>Poulis</u> factors were considered, dismissal with prejudice is warranted and appropriate in this case.

**IV.    CONCLUSION**

For the reasons stated above, the Court will dismiss this action with prejudice for lack of prosecution and will direct the Clerk of Court to close this case.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania